IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

vs.                                                         Nos.    CR 14-00511-001 RB
                                                                             CIV 16-00653 RB/LF

BENJAMIN SOSA,

       Defendant/Movant.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Benjamin Sosa's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 31.[1] The Honorable Robert C. Brack referred this case to me to recommend to the Court an ultimate disposition of the case. Doc. 33. Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Sosa's motion.

**I.**     **Background Facts and Procedural Posture**

On June 19, 2014, Sosa pled guilty to a two-count indictment. *See* Docs. 23, 24. Count 1 of the indictment charged Sosa with being a felon in possession of a firearm and ammunition, and count 2 charged him with being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In his plea agreement, Sosa agreed to waive his right to collaterally attack any sentence the district court imposed, pursuant to 28 U.S.C. § 2255, "except on the issue of [his] counsel's ineffective assistance in negotiating or entering this plea or this waiver." Doc. 23 at 6–7.

---

[1] Citations to "Doc." are to the document number in the criminal case, case number CR 14-00511 RB, unless otherwise noted.

The probation officer who prepared Sosa's presentence report ("PSR") determined that Sosa's base offense level was 24 under USSG[2] § 2K2.1(a)(2) because Sosa had committed the offense after having sustained two felony convictions for a crime of violence. PSR ¶ 15. Sosa received a three-level reduction in his offense level under USSG § 3E1.1 for acceptance of responsibility. PSR ¶¶ 22, 23. His total offense level was 21, and his criminal history category was IV, which resulted in an advisory guideline sentencing range of 57 to 71 months in prison. *Id.* ¶¶ 24, 35, 53.

At sentencing, because neither party objected to the PSR, the Court adopted the PSR without change and found that Sosa's guideline range was as reflected in the report. Doc. 45 (9/23/2014 sentencing transcript) at 2. Sosa requested a sentence of 57 months in prison. *Id.* at 3. The government requested a sentence of 64 months, based on Sosa's two prior felony convictions. *Id.* at 6. The Court imposed the sentence requested by the government because Sosa had "repeatedly committed . . . these offenses." *Id.* at 7, 10. The Court ordered that the sentence of 64 months for each count be served concurrently, and also concurrent to the state sentence that Sosa then was serving. *Id.* at 8. The Court noted that Sosa had waived his right to appeal in his plea agreement. *Id.* at 9.

The Court entered the judgment reflecting this sentence on September 29, 2014. Doc. 29. On June 23, 2016, Sosa filed his Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 and the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Doc. 31.

II.     **Sosa's Claims and the Government's Response**

Sosa argues that the Court violated his constitutional right to due process when it sentenced him under the residual clause of USSG § 4B1.2, as incorporated into USSG § 2K2.1.

---

[2] Sosa was sentenced using the 2013 version of the Sentencing Guidelines. *See* PSR ¶ 14. All references to the Guidelines are to the 2013 version unless otherwise noted.

2

Doc. 31 at 1.  More specifically, he argues that because the Supreme Court invalidated the residual clause of the Armed Career Criminal Act (ACCA)—the part that increased a defendant's statutory maximum sentence if the defendant previously had been convicted of three violent felonies, which included offenses that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), and because the sentencing guideline provision under which he was sentenced has an identical residual clause, *see* USSG §§ 2K2.1(a)(2) & comment. (n.1), 4B1.2(a)(2), his sentence is unconstitutional.  *See* Doc. 31 at 2–3.  He also argues that the two prior convictions that the Court found to be crimes of violence—the New Mexico crimes of aggravated assault and armed robbery—do not qualify as crimes of violence without reference to the now-invalid residual clause.  *See id.* at 4–20.

In response, the government argues that the Court should not reach the merits of Sosa's argument because Sosa waived his right to collaterally attack his sentence.  *See* Doc. 38 at 2–6.  If, however, the Court reaches the merits, the government argues that both of Sosa's prior felony convictions still qualify as crimes of violence because they have, as an element, "the use, attempted use, or threatened use of physical force against the person of another," USSG § 4B1.2.  *See* Doc. 38 at 6–18.

Neither party addresses the issues that currently are pending before the Supreme Court in *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015), *cert. granted,* 136 S. Ct. 2510 (2016), although the government originally sought to stay this case pending the Supreme Court's decision.  *See* Doc. 34.  The issues before the Supreme Court include:  (1) Whether *Johnson* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in USSG § 4B1.2(a)(2); (2) Whether *Johnson's* constitutional holding applies to the residual clause in USSG § 4B1.2(a)(2), thereby rendering challenges to sentences enhanced

3

under it cognizable on collateral review; and (3) Whether mere possession of a sawed-off shotgun, an offense listed as a "crime of violence" only in the commentary to USSG § 4B1.2, remains a "crime of violence" after *Johnson*? *Beckles* was argued orally before the Supreme Court on November 28, 2016. Sup. Ct. Dock. No. 15-8544.

### III.  Discussion

#### A.  Timeliness of Sosa's Motion

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may move the court that sentenced him or her to vacate, set aside or correct a sentence "imposed in violation of the Constitution or laws of the United States." The prisoner must file his or her motion within one year of the latest of four events. *See* 28 U.S.C. § 2255(f). Because Sosa's conviction became final over a year before he filed his petition, he relies on the only other applicable provision, which requires the prisoner to file the motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *See* Doc. 31 at 3; 28 U.S.C. § 2255(f)(3). Sosa argues that the Supreme Court's decision in *Johnson* is the case that made his sentence unconstitutional, and that because he filed his motion within one year of that decision, his petition is timely. *See* Doc. 31 at 3.

Sosa undeniably filed his motion within one year of June 26, 2015, which was the date the Supreme Court decided *Johnson*. *Compare Johnson*, 135 S. Ct. at 2551, *with* Doc. 31 (filed June 23, 2014). Whether the right he asserts is one that was recognized in *Johnson* and will be made applicable to cases on collateral review likely will be decided by the Court in *Beckles*. However, because I find that Sosa effectively waived his right to collaterally attack his sentence in his plea agreement, I recommend that the Court deny his motion. Because of this waiver, I

find it unnecessary to address the merits of his claim or the issues that the Supreme Court likely will decide in *Beckles*.

      B.      <u>Sosa Waived his Right to Collaterally Attack his Sentence Under 28 U.S.C. § 2255</u>.

A defendant's waiver of the right to collateral attack his or her sentence in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181–83 (10th Cir. 2001). When a defendant waives the right to collaterally attack his or her sentence in a plea agreement but later files a motion pursuant to 28 U.S.C. § 2255, the Court must determine (1) whether the collateral attack falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his or her right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United State v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights)); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights").

          1.  *Within the Scope of the Waiver*

In this case, there can be no dispute that Sosa's claim falls squarely within the scope of the waiver. The plea agreement states, "the defendant agrees to waive any collateral attack to this conviction and the sentence imposed, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." Doc. 23 at 6–7. Sosa's claim is a collateral attack on the sentence imposed, brought pursuant to 28 U.S.C. § 2255, and has nothing to do with an allegation that his counsel was ineffective in negotiating the plea or the waiver. *See generally* Doc. 31. His claim therefore falls within the scope of the waiver.

## 2. *Knowing and Voluntary*

There also can be little dispute that Sosa knowingly and voluntarily waived his right to collateral review. The plea agreement clearly stated the nature of the waiver. Doc. 23 at 6–7. Further, Sosa "agree[d] and represent[ed] that this plea of guilty is freely and voluntarily made . . . ." *Id.* at 7. He also represented:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.* at 9. Sosa's attorney also represented that he had "carefully discussed every part of this agreement with [his] client," and that to his knowledge, Sosa's "decision to enter into this agreement is an informed and voluntary one." *Id.*

At his change of plea hearing, Sosa testified that he was "able to understand, read and write English." Doc. 38-1 at 8. He confirmed that he was not "under the influence of any alcohol, drugs or medicine," and that he felt fine. *Id.* at 9. He represented that he had had enough time with his attorney to discuss his case, and that his attorney had answered all of his questions to his satisfaction. *Id.* Sosa also represented that he was "pleased and satisfied" with his attorney's advice and representation. *Id.* Sosa stated that he understood that the maximum penalty he faced on each count was ten years, and that he potentially faced a total sentence of 20 years if the sentences were imposed consecutively. *Id.* at 11–12. He confirmed that no one had made any promises to him to get him to plead guilty, other than the promises made in his plea agreement. *Id.* at 12. He also represented that no one had forced him to plead guilty, and that he was pleading guilty of his own free will. *Id.* He stated that he understood that he could receive a

6

harsher sentence than he or his attorney anticipated. *Id.* at 13. He also stated that his plea agreement had been read to him before he signed it, that he had discussed it with his attorney before he signed it, and that his attorney had answered all of his questions to his satisfaction. *Id.* He also stated that he signed his plea agreement voluntarily, and that he "fully and completely underst[oo]d each and every provision of [his] plea agreement." *Id.* at 13–14. His attorney specifically referred to the appellate waiver, and noted that Sosa had waived his right to appeal [and collaterally attack][3] his conviction and sentence "except on the issue of ineffective assistance of counsel." *Id.* at 15. Sosa stated that he understood this provision and had no questions. *Id.* at 17. Sosa then pled guilty to both counts of the indictment. *Id.* at 20. The judge accepted Sosa's plea, finding that Sosa was "fully competent and capable of entering an informed p1ea," was "aware of the nature of the charge he's facing and all of the consequences of his plea," and that his guilty plea was "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of each of these offenses." *Id.* Based on this evidence, I find that Sosa knowingly and voluntarily waived his right to collaterally attack his sentence.

    3. *Miscarriage of Justice*

Sosa does not address the government's contention that his motion falls squarely within the scope of the waiver, or that he knowingly and voluntarily waived his right to collateral review. *See* Doc. 42 at 1–4. He focuses entirely on the third prong, arguing that enforcing the waiver would result in a miscarriage of justice. *See id.* He argues that because the Tenth Circuit held in *United States v. Madrid*, 805 F.3d 1204, 1212 (10th Cir. 2015) that the district court's

---

[3] Sosa's attorney did not state the words "collaterally attack," but his reference to the exception relating to ineffective assistance of counsel makes clear that he was referring to the waiver of the right to appeal and the right to collaterally attack the sentence, both of which are part of the same provision of the plea agreement. *See* Doc. 23 at 6–7.

7

imposition of an enhanced sentence under the unconstitutionally vague residual clause of USSG § 4B1.2(a)(2) undermined the fundamental fairness of the defendant's sentencing hearing, enforcing the collateral review waiver in this case would constitute a miscarriage of justice. *See* Doc. 42 at 2–4. Sosa's argument is without merit.

In this context, "a miscarriage of justice through enforcement of a waiver occurs *only* in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327) (emphasis added); *see also United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) ("*Miscarriage of justice* . . . has a narrow meaning" in the context of an appellate waiver.). Sosa bears the burden of establishing that one of these four situations exists. *Id.*

Sosa makes no suggestion, nor is there any evidence, that any of the first three situations are implicated here. *See* Doc. 42 at 1–4. The district court did not rely on any impermissible factor in sentencing Sosa. *See* Doc. 45. Sosa does not claim that his counsel was ineffective in negotiating the waiver. *See* Doc. 31. The district court imposed a sentence of 64 months in prison on each count, to run concurrently, which is well within the statutory maximum of ten years in prison. Sosa argues, however, that the waiver is "unlawful" because under *Madrid*, sentencing a defendant under an unconstitutional provision of the Guidelines implicates fundamental fairness and constitutes reversible plain error. *See* Doc. 42 at 2–4. Sosa's argument, however, misapprehends the nature of plain error review and the difference between forfeiture and waiver.

Forfeiture is the failure to timely assert a right, or the failure to timely object to the violation of a right.  *See United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007).  Waiver, on the other hand, is the "intentional relinquishment or abandonment of a known right."  *Olano*, 507 U.S. at 733 (internal quotation marks omitted).  Forfeiture occurs through neglect, whereas waiver is accomplished by intent. *See Carrasco-Salazar*, 494 F.3d at 1272.  In other words, unlike the defendant in *Madrid*, who had *forfeited* his right to object to his sentence by failing to assert that the residual clause in § 4B1.2(a)(2) was void for vagueness, *see* 805 F.3d at 1211, Sosa *intentionally* relinquished his right to collaterally attack his sentence, regardless of the merits of any claim he may have.

As the Tenth Circuit has explained,

> Our inquiry is not whether the sentence is unlawful, but whether the waiver itself is unlawful because of some procedural error or because no waiver is possible. . . . An appeal waiver is not "unlawful" merely because the claimed error would, in the absence of waiver, be appealable.  To so hold would make a waiver an empty gesture.

*Sandoval*, 477 F.3d at 1208 (internal citations omitted).  "The whole point of a waiver . . . is the relinquishment of claims *regardless* of their merit."  *United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir. 2000) (emphasis in original).

Sosa does not satisfy his burden of establishing that the waiver in this case was unlawful or improper in any way.  He only argues that under *Johnson* and *Madrid*, he was sentenced using an unconstitutionally vague sentencing guideline.[4]  But this Court

---

[4] It is important to note that it is not obvious (or uncontested) that the district court sentenced Sosa under the residual clause of USSG § 4B1.2(a)(2) that the Tenth Circuit held was unconstitutional in *Madrid*.  The PSR did not specify how the probation officer determined that Sosa's prior offenses qualified as crimes of violence.  *See* PSR ¶ 15.  Because neither party objected to this characterization, the district court also did not determine whether the prior offenses only qualified under the residual clause, or whether they also qualified as crimes of violence under USSG § 4B1.2(a)(1).  *See* Doc. 45 at 2.  The government argues in its response to Sosa's motion that both of Sosa's prior offenses qualify as crimes of violence under

must determine the validity of the waiver without reference to the merits of his underlying claim. Sosa points to no authority suggesting that the waiver of his right to collaterally attack his sentence—a sentence well within the statutory maximum sentence—is itself unlawful. Indeed, the Tenth Circuit has recognized that such waivers are lawful and enforceable. *See Cockerham*, 237 F.3d at 1181–83. Enforcing the waiver in this case would not constitute a miscarriage of justice because the waiver itself is not unlawful.

Sosa cites one district court opinion that adopted the argument he makes here.[5] *See* Doc. 42 at 3 (citing *United States v. Daugherty*, 2016 WL 4442801 (N.D. Okla. Aug. 22, 2016) (unpublished)). I do not find *Daugherty* persuasive as the court there did not distinguish between the plain error standard of review used in *Madrid*, which was based on forfeiture, and the intentional relinquishment of a known right, which is what we have here. *See Daugherty*, 2016 WL 4442801, at *7 ("For the same reasons stated in *Madrid*, the Court finds that the Court's *Johnson*-based sentencing error not only affected Defendant's substantial rights but also affected the fundamental fairness of his sentencing proceedings."); *see also Vehikite v. United States*, 2016 WL 5955885, at *4 (D. Utah Oct. 13, 2016) (unpublished) ("Based on this reasoning in *Madrid*, the Court concludes that enforcing the waiver in Petitioner's plea agreement would result in a miscarriage of justice."); *Jaramillo v. United States*, 2016 WL 5947265, at *3 (D. Utah Oct. 13, 2016) (unpublished) (same). I instead find the analysis in *United States v. Rabieh*, 2016 WL

---

§ 4B1.2(a)(1). But because the validity of the collateral attack waiver in Sosa's plea agreement is not dependent of the merits of Sosa's underlying claim, I do not address this issue.

[5] Sosa also cites two opinions from other Circuits. *See* Doc. 42 at 3–4. Because the law in the Tenth Circuit is clear and binding on this Court, it is unnecessary to distinguish these out-of-circuit opinions from this case.

5921091 (W.D. Okla. Oct. 11, 2016) (unpublished) persuasive. There, the district court rejected the notion that *Madrid* required the court to determine that defendant's waiver of a collateral attacks based on *Johnson* was unlawful, and that enforcing the waiver would be a miscarriage of justice. *Id.* at \*1–\*2. It correctly held that because the defendant "offered no argument or authority demonstrating that his waiver was unlawful or improper . . . , he cannot show a miscarriage of justice as required by *Hahn*." *Id.* at \*2. The same is true in this case.

### IV. Recommendation

Sosa knowingly and voluntarily waived his right to bring the claim he asserts in his Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 in his plea agreement. He has not demonstrated that this waiver was unlawful or improper in any way. Thus, enforcing the waiver would not constitute a miscarriage of justice. I therefore recommend that the Court DENY Sosa's motion because the terms of Sosa's plea agreement bar his claim.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

*/s/ Laura Fashing*
Laura Fashing
United States Magistrate Judge